UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:18-cv-00012-JMH-EBA

MARK A. PRICE,                                                                                          PLAINTIFF,

v.                                    **RECOMMENDED DISPOSITION**

CORRECT CARE SOLUTIONS, et al.,                                                    DEFENDANTS.

This matter comes before the Court on Plaintiff Mark A. Price's Motion to Amend Complaint and Motion for Preliminary Injunction. [R. 28; R. 31]. Having considered the matters fully, and being otherwise sufficiently advised, the undersigned will deny Plaintiff's Motion to Amend Complaint. [R. 28]. Additionally, the undersigned will recommend Plaintiff's Motion for Preliminary Injunction be denied insofar as it pertains to Defendant Correct Care Solutions ("CCS") and denied as moot insofar as it pertains to Defendants Angela Clifford and Shelli Conyers-Votan. [R. 31].

**DISCUSSION**

**A. PLAINTIFF'S MOTION TO AMEND COMPLAINT**

On January 11, 2018, *pro se* Plaintiff filed a Complaint under 42 U.S.C. § 1983 alleging CCS, which provides medical care to Kentucky inmates on a contractual basis, and several CCS employees, including Dr. Frederick Kemen, Medical Supervisor and Director for CCS, deprived Plaintiff of medical treatment while he was incarcerated. [R. 1].

On January 17, 2018, after conducting a preliminary review of Plaintiff's Complaint, the Court dismissed Dr. Kemen as a defendant "because [Plaintiff] does not allege that Dr. Kemen was personally involved in the medical care provided to [Plaintiff], only that [Dr. Kemen] had

supervisory responsibilities over those who did." [R. 7, at 2 (citing [R. 1, at 10-11])]. Specifically, the Court found:

> This is not sufficient to establish a constitutional claim against Dr. Kemen because an officer is only responsible for his or her own conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("In a § 1983 suit or a *Bivens* action – where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer."). The mere fact of supervisory capacity is not enough: an official must be personally involved in the conduct complained of because *respondeat superior* is not an available theory of liability. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981).

[R. 7, at 2-3]. "'At a minimum, a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending employee.'" *Slone v. Lincoln County, Kentucky*, 242 F. Supp. 3d 579, 591 (E.D. Ky. Mar. 16, 2017) (citing *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989) (quoting *Hays v. Jefferson*, 668 F.2d 869, 872 (6th Cir. 1982))).

Despite Dr. Kemen having been dismissed from this action, on July 6, 2018, Plaintiff moved to amend his Complaint by adding Dr. Frederick Kemen as a defendant, claiming Dr. Kemen was deliberately indifferent to Plaintiff's medical needs because (1) Dr. Kemen, as Dr. Angela Clifford's supervisor, failed to treat Plaintiff's Hepatitis C virus, (2) "[University of Kentucky] Medical Staff . . . recommended CCS defendants treat [Plaintiff] for [Hepatitis C]," and Dr. Kemen made the final decision not to treat Plaintiff, and (3) Dr. Kemen, as Dr. Clifford's supervisor, approved Dr. Clifford's medical decision to decrease Plaintiff's neuropathy medication, which Plaintiff also alleges was an act of gross negligence. [R. 28, at 2-5]. "It is well settled that 'deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment.'" *Runkle v. Fleming,* 435 F. App'x 483, 484 (6th Cir. 2011) (citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)).

2

Pursuant to Federal Rule of Civil Procedure 15(a)(2), when a motion to amend, such as Plaintiff's Motion to Amend Complaint, is filed more than 21 days after responsive pleadings have been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The grant or denial of a motion to amend is within the sound discretion of the Court." *Birchwood Conservancy v. Webb*, 302 F.R.D. 422, 424 (E.D. Ky. 2014) (citing *Marks v. Shell Oil Co.,* 830 F.2d 68, 69 (6th Cir. 1987)).

When ruling on a party's motion for leave to amend a pleading, the Court should consider the following factors:

> (1) undue delay in filing the motion; (2) lack of notice to adverse parties; (3) whether the movant is acting in bad faith, or with a dilatory motive; (4) failure to cure deficiencies by previous amendments; (5) the possibility of undue prejudice to adverse parties; and (6) whether the amendment is futile.

*Webb*, 302 F.R.D. at 424 (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Robinson v. Michigan Consol. Gas Co.,* 918 F.2d 579, 591 (6th Cir. 1990)).

In the present case, Defendants argue, "[Plaintiff] has failed to allege sufficient facts against Dr. Kemen that would withstand a Motion to Dismiss and his proposed Amended Complaint would be futile." [R. 34, at 3]. "'A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.'" *Riverview Health Institute LLC v. Medical Mutual of Ohio,* 601 F.3d 505, 512 (6th Cir. 2010) (citing *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000)).

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be attacked for failure "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl.*

*Corp. v. Twombly*, 550 U. S. 544, 570 (2007)). "A motion to dismiss is properly granted if it is beyond doubt that no set of facts would entitle the petitioner to relief on his claims." *Computer Leasco, Inc. v. NTP, Inc.*, 194 F. App'x 328, 333 (6th Cir. 2006). When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id*. (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Here, Plaintiff's proposed amendment alleges Dr. Kemen did more than merely supervise Plaintiff's medical providers. In sum, Plaintiff's Motion to Amend Complaint alleges Dr. Kemen was deliberately indifferent to Plaintiff's medical needs by implicitly authorizing, approving, or knowingly acquiescing in Defendants' alleged deliberate indifference toward Plaintiff's medical needs. [R. 28, at 2-5; R. 39, at 2-6]; *see Slone,* 242 F. Supp. 3d at 591 (citing *Leach*, 891 F.2d at 1246 (quoting *Hays*, 668 F.2d at 872)). However, Dr. Kemen is not liable under the doctrine of *respondeat superior* unless Plaintiff can show Dr. Kemen implemented a policy or custom that was deliberately indifferent to Plaintiff's medical needs. *Terrance v. Northville Regional Psychiatric Hosp.,* 286 F.3d 834, 847 (6th Cir. 2002) (citing *Monell v. Dept. of Social Serv.,* 436 U.S. 658, 691 (1978)). To prove the existence of an illegal policy or custom, "[t]he plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Spears v. Ruth,* 589 F.3d 249, 256 (6th Cir. 2009) (citing *Thomas v. City of Chattanooga,* 398 F.3d 426, 429 (6th Cir. 2005)).

Plaintiff's Motion to Amend Complaint lacks any factual allegations that his alleged harm resulted from a policy or custom implemented by either CCS or Dr. Kemen. [R. 28]. Even if Dr. Kemen made the final decisions regarding whether or how to treat Plaintiff's medical needs, Plaintiff fails to argue Dr. Kemen's decisions regarding Plaintiff's medical treatment were backed by any policy or custom. Therefore, Plaintiff's Motion to Amend Complaint fails to allege sufficient facts against Dr. Kemen that would withstand a Motion to Dismiss, so Plaintiff's proposed amendment would be futile. *Riverview Health Institute LLC,* 601 F.3d at 512 (citing *Rose,* 203 F.3d at 420). Moreover, insofar as Plaintiff argues Dr. Kemen was negligent, Plaintiff's proposed amendment is futile because "'[w]hen dealing with medical care for detainees, negligence does not state a cause of action under § 1983.'" *Border v. Trumbull County Bd. of Com'rs,* 414 F. App'x 831, 837 (6th Cir. 2011) (citing *Weaver v. Shadoan,* 340 F.3d 398, 411 (6th Cir. 2003)). Since Plaintiff's proposed amendment is futile, the Court will deny Plaintiff's Motion to Amend Complaint [R. 28]. *Id.*; *Webb*, 302 F.R.D. at 424 (citing *Foman,* 371 U.S. at 182; *Robinson,* 918 F.2d at 591).

### B. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff filed a Motion for Preliminary Injunction requesting the Court order Defendants to do the following:

> #1 Treat the Plaintiff for the joint damage that [Defendants] caused to the Plaintiff. By transf[er]ring him to a [facility] that can offer him physical therapy, and [prescribe] him the proper medications that he may need for these injuries.
>
> # 2 Treat the Plaintiffs [sic] Hep[atitis C] Condition by placing him on a 90-day cycle of Harvoni[] (A Hep[atitis] C) pill that cures this disease.
>
> # 3 Treat Plaintiff for his diabetes (neuropathy) n[e]rve pain, by increasing his Gabapentin, to the normal 1600 mg. 2x a day.

[R. 31, at 7].

5

To determine whether to issue a preliminary injunction, the Court must consider the following four factors:

> (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction.

*Overstreet v. Lexington-Fayette Urban County Government,* 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000)); *see also Rhinehart v. Scutt,* 509 F. App'x 510, 513 (6th Cir. 2013) (citing *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet,* 305 F.3d at 573 (citing *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.,* 163 F.3d 341, 347 (6th Cir. 1998)). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet,* 305 F.3d at 573 (citing *Leary,* 228 F.3d at 739).

### 1. PLAINTIFF'S LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff has not shown that he is likely to succeed on the merits. While no single factor is controlling when determining whether a preliminary injunction should issue, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Medical Examiners,* 225 F.3d 620, 625 (6th Cir. 2000) (citing *Michigan State AFL–CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997)). As Defendants correctly assert, "In the context of a § 1983 claim for inadequate medical care, prison personnel violate a prisoner's civil rights only if they are deliberately indifferent to the prisoner's serious medical needs." [R. 36, at 4 (citing *Estelle,* 429 U.S. at 104-106)]. A deliberate indifference claim requires Plaintiff to show "both that the 'alleged mistreatment was objectively serious,' and that the officials 'subjectively ignored the risk to the

6

inmate's safety.'" *Rhinehart,* 509 F. App'x at 513 (citing *Bishop v. Hackel,* 636 F.3d 757, 766 (6th Cir. 2011)). However, "[n]either negligence alone, nor a disagreement over the wisdom or correctness of a medical judgment is sufficient for the purpose of a deliberate indifference claim." *Rhinehart,* 509 F. App'x at 513 (citing *Estelle,* 429 U.S. at 106; *Sanderfer v. Nichols,* 62 F.3d 151, 154-55 (6th Cir. 1995)).

In *Rhinehart*, a plaintiff claimed prison officials had been deliberately indifferent to his medical needs. *Rhinehart,* 509 F. App'x at 513. The *Rhinehart* Court found, "Rhinehart has not alleged more than a difference of opinion with respect to his medical treatment, and as a general rule, where a plaintiff has received care, he will not be able to sustain a claim of deliberate indifference." *Id.* at 513-14 (citing *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir. 1976)). While the plaintiff in *Rhinehart* "alleged significant physical pain . . . there was no evidence presented that this pain was being caused deliberately by the prison staff, or was being caused by their neglect." *Rhinehart,* 509 F. App'x at 514. Finding "[c]ourts are hesitant to second-guess professional judgments exercised by medical professionals," the *Rhinehart* Court held, "The treatment provided to Rhinehart does not clearly suggest cruel and unusual punishment." *Id.*

Like *Rhinehart*, in the present case, Plaintiff claims prison medical staff did not provide him proper medical treatment. [R. 1]. Specifically, Plaintiff's Original Complaint asserts the following three claims that were previously summarized by the Court as follows:

> In the first [claim] he alleges that in February 2017, while he was incarcerated at the Northpoint Training Center in Burgin, Kentucky, Nurse Shelli Conyers-Votan gave him medication for arthritis after a minor injury, which he contends caused swelling in numerous joints five to seven days later, and that Dr. Angela Clifford failed to properly treat his resulting symptoms. [R. 1 at 6-7]
> In the second claim, Price alleges that in May 2017 Dr. Clifford refused to follow recommendations by a physician at the University of Kentucky Medical Center to treat his Hepatitis C. [R. 1 at 8-9] In his third claim, Price alleges that in May 2017 Dr. Clifford changed his prescription for Gabapentin, used to treat his

7

>diabetes and neuropathy, to a much weaker dose, causing an increase in the nerve pain he suffers. [R. 1 at 8-9]

[R. 7, at 1-2 (citing [R. 1, at 6-9])]. Also, like *Rhinehart*, Plaintiff's allegations amount to a difference of opinion concerning his medical treatment. Admittedly, Plaintiff received treatment for his joint pain and his diabetic neuropathy, but he believes his received treatment to be inadequate. [R. 1; R. 31].

Additionally, aside from his own declarations, Plaintiff provides no evidence showing the treatment he seeks for Hepatitis C would benefit him. [R. 1; R. 31]. Instead, Plaintiff asserts that despite treating other inmates with a medication called "Harvoni," Defendants fail to treat Plaintiff's Hepatitis C. [R. 31, at 2-3]. Additionally, as Plaintiff posits, it is true that deliberate indifference may exists when a prison doctor intentionally interferes with a prisoner's medical treatment once prescribed. [R. 31, at 7 (citing *Estelle*, 429 U.S. at 105)]. However, Plaintiff does not allege he was prescribed Harvoni. Instead, he claims Dr. Clifford refused to follow an outside physician's recommendation that Plaintiff be treated for his Hepatitis C. [R. 1, at 8-9]. Plaintiff fails to state what treatment the outside physician recommended. Therefore, Plaintiff has not shown Defendants have intentionally interfered with his prescribed medical treatment.

Moreover, Plaintiff fails to provide evidence showing Harvoni either cures or treats Hepatitis C, as Plaintiff suggests. [R. 31, at 7]. In fact, aside from Plaintiff's declaration that he "is diagnosed with Hepatitis C," he has provided no evidence showing the status of his Hepatitis C diagnosis. *Id.* at 2. Without knowing the status of Plaintiff's Hepatitis C diagnosis or whether Harvoni is a proper treatment for Plaintiff's illness, the undersigned is unable to find Defendants' alleged failure to prescribe Plaintiff Harvoni to be anything more than a "difference of opinion with respect to his medical treatment." *Rhinehart,* 509 F. App'x at 513-14 (citing *Westlake,* 537 F.2d at 860 n. 5).

"While it is possible for the care in a prison to be so 'grossly inadequate' as to constitute deliberate indifference," that is not the case here. *Rhinehart,* 509 F. App'x at 514 (citing *Terrance,* 286 F.3d at 843-844). Grossly inadequate medical care is defined as medical treatment that is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Terrance,* 286 F.3d at 844 (citing *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989)). "[T]he relevant inquiry as to whether the defendants provided grossly inadequate care [is] 'whether a reasonable doctor . . . could have concluded his actions were lawful.'" *Terrance,* 286 F.3d at 844 (citing *Waldrop,* 871 F.2d at 1034).

Here, Plaintiff fails to show a reasonable doctor could not have concluded Defendants' actions were lawful. *Id.* Even when presumed to be true, Plaintiff's claims do not show Plaintiff's medical treatment "to shock the conscience or to be intolerable to fundamental fairness." *Terrance*, 286 F.3d at 844 (citing *Waldrop,* 871 F.2d at 1033). At most, Plaintiff's allegations show Defendants were negligent or treated Plaintiff's medical needs in a manner that Plaintiff disagreed with, and neither negligence nor a disagreement over a medical judgment is sufficient for the purpose of a deliberate indifference claim. *Rhinehart,* 509 F. App'x at 513 (citing *Estelle,* 429 U.S. at 106; *Sanderfer v. Nichols,* 62 F.3d at 154-55). Moreover, insofar as Plaintiff's first claim alleges that CCS's medical staff members, including Defendants Clifford and Conyers-Votan, were negligent and committed medical malpractice, he fails to state a cognizable claim under § 1983. [R. 1, at 5-7]; *Terrance,* 286 F.3d at 843 (citing *Estelle,* 429 U.S. at 106) ("'[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'"). Therefore, Plaintiff's action is not likely to succeed on the merits.

## 2. IRREPARABLE HARM

Plaintiff argues that due to the nature of his medical conditions, if he does not "receive proper medical treatment in a proper time," he could suffer permanent disability in his joints and death due to not being treated for Hepatitis C, a liver disease. [R. 31, at 6]. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet,* 305 F.3d at 578 (citing *Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir. 1992)). "Courts have also held that a plaintiff can demonstrate that a denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights." *Overstreet,* 305 F.3d at 578 (citing *Connection Distrib. Co. v. Reno,* 154 F.3d 281, 288 (6th Cir. 1998); *Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir. 1992); *McDonell v. Hunter,* 746 F.2d 785, 787 (8th Cir. 1984)). Since the undersigned has already found that it is unlikely Plaintiff will be able to succeed on the merits, "[Plaintiff] has not shown a continuing violation of his Eighth Amendment rights, so the irreparable injury must be more than [Plaintiff's] allegation of a constitutional violation." *Rhinehart,* 509 F. App'x at 514 (citing *Elrod v. Burns,* 427 U.S. 347, 373–74 (1976)); *see also Overstreet,* 305 F.3d at 578 ("The Court has already discussed the fact that it is unlikely that Mr. Overstreet will be able to demonstrate that he has a cognizable constitutional claim. Thus, his argument that he is entitled to a presumption of irreparable harm based on the alleged constitutional violation is without merit.").

Plaintiff alleges he is being harmed by Defendants' treatment, or lack thereof, of his medical conditions. [R. 1; R. 31]. However, Plaintiff fails to establish that his medical conditions will worsen if he does not receive his requested relief immediately. Moreover, there is no dispute Plaintiff has medical needs, "[b]ut the seriousness of his condition[s] [are] not, without some constitutional deprivation, enough to show a harm that requires relief prior to the adjudication of

10

his claims." *Rhinehart,* 509 F. App'x at 514. Therefore, Plaintiff has not shown that waiting for an adjudication on the merits will result in irreparable harm.

### 3. WHETHER THE ISSUANCE OF THE INJUNCTION WOULD CAUSE SUBSTANTIAL HARM TO OTHERS

Defendants argue, "Taking decisions out of the hands of prison officials under the circumstances present in this case could cause substantial harm in disrupting prison administration." [R. 36, at 6]. "[J]udicial interference is necessarily disruptive, and absent a sufficient showing of a violation of constitutional rights, the public welfare suffers if such extraordinary relief is granted in the prison context." *Lang v. Thompson,* No. 5:10-cv-379, 2010 WL 4962933, at *7 (E.D. Ky. Nov. 30, 2010) (citing *Clay v. Isard,* No 09–00209, 2010 WL 565121, at *2 (W.D. Mich. Feb. 10, 2009)). In *Rhinehart*, finding the balance of equities weighed against granting a preliminary injunction, the Court held, "Rhinehart's interest in immediately receiving care for a health condition that is unlikely to result in irreparable harm" was lesser than "the defendants' interests in managing their medical procedures and resources and avoiding an expenditure without a merits determination by a court." *Rhinehart,* 509 F.3d F. App'x at 516.

Like *Rhinehart,* in the present case, Defendants' interests in managing their own medical procedures and resources outweighs Plaintiff's interest in immediately receiving the medical treatments he requests for medical conditions that are unlikely to result in irreparable harm. Under the present circumstances, absent a merits determination by the Court, substantial harm could result from the Court interfering with Defendants' decisions regarding Plaintiff's medical treatment because such judicial interference could disrupt Defendants' policies and procedures concerning the treatment of prisoners and divert medical resources from other prisoners. *See Rhinehart,* 509 F.3d F. App'x at 515-16. Therefore, the balance of the Parties' respective interests weighs against a preliminary injunction.

### 4. WHETHER THE PUBLIC INTEREST WOULD BE SERVED BY ISSUING THE INJUNCTION

Plaintiff has not shown the public interest supports a preliminary injunction. "In constitutional cases, an inquiry into the public interest is difficult to separate from the likelihood of success on the merits because 'the public interest is promoted by the robust enforcement of constitutional rights.'" *Id.* at 516 (citing *Am. Freedom Def. Initiative v. Suburban Mobility for Reg. Transp.,* 698 F.3d 885, 896 (6th Cir. 2012)). "[I]n the absence of a likely constitutional violation . . . separation of powers and federalism strongly discourage the federal courts from entangling themselves in the administration of state prison health care systems." *Rhinehart,* 509 F.3d F. App'x at 516 (citing *Turner v. Safley,* 482 U.S. 78, 84–85 (1987); *Bell v. Wolfish,* 441 U.S. 520, 544 (1979); *Preiser v. Rodriguez,* 411 U.S. 475, 491–92 (1973)). There is also a public interest in leaving the administration of prisons to prison administrators. *Rhinehart,* 509 F.3d F. App'x at 516. Since Plaintiff is unlikely to succeed on the merits, the public interest weighs against a preliminary injunction.

### 5. PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION AS IT PERTAINS TO DEFENDANTS CLIFFORD AND CONYERS-VOTAN

Since filing this action, Plaintiff is no longer incarcerated at the Northpoint Training Center. [R. 21; R. 31, at 6]. Based on Plaintiff's own admission, he is currently incarcerated at Lee Adjustment Center. *Id.* While Defendant CCS administers medical care to inmates throughout Kentucky, Defendants Clifford and Conyers-Votan work at the Northpoint Training Center. [R. 31, at 5]. As Defendants correctly assert, "[E]ven if this Court were to order defendants Vota[n] and Clifford to provide treatment, they could not comply with the order as they do not provide medical treatment at Lee Adjustment Center where Plaintiff is currently housed." [R. 36, at 6]. Therefore, having considered the four factors for whether to issue a preliminary injunction and the

fact that Defendants Clifford and Conyers-Votan cannot provide medical treatment to Plaintiff at the location where he is currently incarcerated, the undersigned will recommend Plaintiff's Motion for Preliminary Injunction be denied insofar as it pertains to Defendant CCS and denied as moot insofar as it pertains to Defendants Clifford and Conyers-Votan.

## CONCLUSION

Having considered the matters fully, and being otherwise sufficiently advised,

1. IT IS ORDERED that Plaintiff's Motion to Amend Complaint [R. 28] is DENIED; and

2. IT IS FURTHER RECOMMENDED that Plaintiff's Motion for Preliminary Injunction [R. 31] be:

    a. DENIED insofar as Plaintiff's Motion for Preliminary Injunction [R. 31] pertains to Defendant Correct Care Solutions; and

    b. DENIED AS MOOT insofar as Plaintiff's Motion for Preliminary Injunction [R. 31] pertains to Defendants Angela Clifford and Shelli Conyers-Votan.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.,* 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

This the 23th day of July 2018.



Signed By:
**Edward B. Atkins** *EBA*
United States Magistrate Judge