UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:18-CV-12-JMH-EBA

MARK A. PRICE,                                                                                           PLAINTIFF,

V.                                   **RECOMMENDED DISPOSITION**

CORRECT CARE SOLUTIONS, LLC, *et al.*,                                              DEFENDANTS.

*** *** *** ***

## INTRODUCTION

This matter is before the Court on the Defendants', Correct Care Solutions, LLC, Shelli Conyers-Votan, and Dr. Angela Clifford, motion for summary judgment. [DE # 58]. Pursuant to 28 U.S.C. § 636(b), this case has been referred to the undersigned to conduct further proceedings, including preparing findings of fact and recommendations on any dispositive motions. [DE # 10]. After careful consideration and detailed review, and for the reasons that follow, the undersigned hereby **RECOMMENDS** that Defendants' motion for summary judgment **[DE # 58]** on all federal constitutional claims be **GRANTED**, that his state law claims be dismissed without prejudice, and this case be dismissed with prejudice.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

This is a *pro se* civil rights case pursuant to 42 U.S.C. § 1983. [DE #1]. In his complaint, Plaintiff Mark A. Price asserts three (3) claims against six (6) defendants. First, he alleges that on or about February 1, 2017, while incarcerated at the Northpoint Training Center (NTC) in Burgin, Kentucky, Nurse Shelli Conyers-Votan gave him arthritis medication to treat a minor ankle sprain which, five or six days later, caused him swelling in numerous joints.

1

Subsequently, upon being seen by an NTC physician, Dr. Angela Clifford, Price contends that she mistakenly diagnosed him with rheumatoid arthritis, and failed to properly treat his (actual) ailments: Hepatitis C and diabetic nerve damage. [*Id.* at 5-7; *Id.* at 13]. Second, Price argues that sometime in May 2017, after having returned from the University of Kentucky Medical Center (UKMC), Dr. Clifford refused to follow the recommendations made by the treating physician at UKMC to treat his Hepatitis. [*Id.* at 8]. Lastly, in his third claim, Price alleges that sometime in May 2017, Dr. Clifford significantly reduced his prescription of Gabapentin, used to treat his diabetic neuropathy, increasing the amount of nerve pain in his feet.[1]

Pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, upon initial screening of the complaint, the Court dismissed three (3) of the defendants and the claims against them. [R. 7]. Shortly thereafter, this matter was referred to the undersigned to conduct all further proceedings. *See* 28 U.S.C. § 636(b). [DE # 10]. On May 14, 2018, a Scheduling Order was entered establishing respective deadlines [DE # 20]; however, this order was later amended to reflect the dates proposed by Price.[2]

Throughout this proceeding—and until the filing of this motion—Price's filing of several miscellaneous motions has caused the procedural posture of this case to shift in several

---

[1] Price further alleged that he was transferred to the Green River Correctional Center (GRCC) in Central City, Kentucky, on October 13, 2017. While there, he continued to suffer nerve pain in his feet, and thus, begged the medical staff to raise his dose of Gabapentin, but they refused. His pain spread to other parts of his body. [DE #1 at 9-10]. This allegation, however, will not be addressed further since the GRCC has not been named as a party (nor have any of its individual members). Additionally, the Court has already determined that the claims against them could not have been properly joined under Federal Rule of Civil Procedure 18. [DE #7 at 2 n.1].

[2] The parties were directed to submit their respective scheduling and discovery plans by March 7, 2018. [DE #13]. All parties tardily submitted their plans. On May 8, 2018, the defendants filed their proposed scheduling and discovery plan. [DE #19]. By that time, the plaintiff had yet to respond to the Court's directive. On May 14, 2018, the Court entered its Scheduling Order; however, it was subsequently amended to account for the dates proposed by Price in his scheduling and discovery plan, submitted on May, 23 2018.

respects. From May 25, 2018 to September 25, 2018—a total of four months—Price filed ten (10) motions. *See generally* DE ## 23, 24, 28, 31, 41, 44, 47, 48, 50, 52. Most of these motions were denied.[3]

On November 1, 2018, indicating that he would soon be released from incarceration, Price sought a continuance of several of the deadlines set out in the amended scheduling order [DE #54]. The Court granted Price's motion, thus, extending the fact discovery deadline to January 16, 2019 (with status reports being submitted on this date), as well as the dispositive motion deadline to February 11, 2019. [DE #55 ¶¶ 2-3]. On January 14, 2019, Defendants filed a motion for summary judgment, accompanied by several medical records and grievance records. [DE #58]. The Court directed Price to respond to the defendants' motion on or before February 5, 2019. [DE #62]. No response was submitted in opposition; instead on February 8, 2019, Price filed a notice of change of address [DE #69].

Having received notice that Price's mail had been returned as undeliverable (*see generally* DE ## 66, 67, 68), the Court directed the Clerk to resend the mail to his new address designated in the letter. [DE #69]. Since February, time has come and gone, without any response from Price. Thus, the undersigned, having been tasked with issuing a recommendation on any dispositive motions, now considers the defendants' motion [R. 58]. Defendants move for summary judgment on all claims asserted against them, claiming that

---

[3] Just cause influenced the Court's denial of the following motions: (1) motion for the production of documents [DE ##23, 27]; (2) first motion to appoint counsel [DE ##24, 26]; (3) motion to amend his complaint [DE ##28, 43]; (4) first motion for preliminary injunction [DE ##31, 43, 64, 65]; (5) second motion for preliminary injunction [DE ##41, 63, 71, 72]; (6) second motion to appoint counsel [DE #44, 45]; and (7) motion to oppose defendants' entry of appearance for additional counsel [DE #48, 49]. Price's three, other motions (DE ## 47, 50, 52)—filed in support of his claims against the Defendants—were granted since no objections were raised against said motions. [DE #61].

3

Price not only fails on the merits, but also that he failed to exhaust his administrative remedies before pursuing this § 1983 action.

## SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In making the determination as to whether summary judgment is warranted, "a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court's summary judgment analysis "must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate…prior to trial, that the claims and defenses have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Id.* at 323. But there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* As such, in some cases, the moving party may be "'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* (quoting Fed. R. Civ. P. 56). Such a motion "therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the

depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted). This is so because "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323–24.

"[T]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). In such a case, summary judgment is warranted. *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010); *Celotex,* 477 U.S. at 322; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## WHETHER PRICE FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

**1. The PLRA exhaustion requirement bars Price's federal claims.**

Defendants first argue that Price failed to fully exhaust the administrative grievance remedies available to him at NTC. As such, this failure warrants summary judgment in the defendants' favor on the claims against CCS, Nurse Conyers-Votan, and Dr. Clifford.

The Prison Litigation Reform Act ("PLRA") states, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In other words, a prisoner must exhaust *all* administrative remedies available to them before filing suit challenging any aspect of their

prison conditions. In a case such as this one where "the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012)).

The Supreme Court has noted, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "There is no uniform federal exhaustion standard. A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Mattox*, 851 F.3d at 590 (citing *Jones v. Bock*, 549 U.S. 199, 217-219 (2007)). Exhaustion of administrative remedies must be done "properly," which means going through all steps that the agency holds out, obeying all directions, and adhering to all deadlines set by the administrative rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is required even if the prisoner subjectively believes that the administrative remedy procedure is ineffectual or futile. *Pack v. Martin*, 174 F. App'x. 256, 262 (6th Cir. 2006).

Price alleges that he made efforts to resolve his issues with NTC through the administrative processes available at the jail. Defendants disagree.

> In his Complaint, Plaintiff correctly identifies the relevant grievance case nos. associated with the claims asserted in this litigation. [RE #1: Complaint, (listing Grievance Nos. 017-434; 017-399; and 017-471).] However, Plaintiff incorrectly asserts that he exhausted all administrative remedies associated with those grievances. [*Id*.] As evidenced by the September 6, 2017 letter from NTC Administrative Specialist Brandon Lynch, Plaintiff failed to timely appeal all three of the adverse determinations of the Health Care Grievance Committee relating to those grievances thus resulting in the grievances being dismissed as moot. [Exh. 2: Griev. Records, at Northpoint 0035; 0055; 0066.]

6

[DE #58 at 10 n.7].

The NTC's administrative regulations, known as Corrections Policies and Procedures ("CPP") govern prison grievance procedures in NTC facilities. *See* 501 K.A.R. 6:020. CPP § 14.6, entitled "Inmate Grievance Procedure," lists the steps which NTC inmates must pursue during the grievance process prior to filing a lawsuit. Pursuant to CPP 14.6, a NTC inmate wishing to file a grievance concerning medical health care services must go through three steps. [§ II(K)(1)-(3)]. First, the inmate must file a written grievance and seek an Informal Resolution, [§ II(K)(1)], ("Step 1"). If not satisfied there, he may request review by the Health Care Grievance Committee, seeking a hearing to consider his grievance, [§ II(J)(2)], ("Step 2"). If not satisfied with the Grievance Committee's disposition, he must appeal to the Medical Director, [§ II(J)(3)], ("Step 3"). Time frames for appeals and responses are established within the regulation.

As an NTC prisoner, Price was required to have pursued and completed all three steps of the administrative remedy process before filing this § 1983 action. Defendants acknowledge that Price pursued the first two steps of the grievance process, [*see* DE #58 at 4-7, 9-13], but he did not successfully complete the third and final step necessary to exhaust his administrative remedies, which was submitting an appeal to the Medical Director within three (3) working days of the Grievance Committee's adverse determination. Therefore, his three grievances were denied as moot. [*Id.*]. The defendants are correct.

A thorough review of the grievance records reveals that, while Price filed three grievances (17-399, 17-434, and 17-471)—receiving unfavorable recommendations from the committee and seeking to appeal to Medical Director— he fell past his three-day window of

7

which to file a timely appeal per CPP 14.6. [DE ## 47-1 at 59-92, 58-2].[4] Accordingly, on September 6, 2017 an NTC Administrative Specialist, Brandon Lynch, dismissed the three grievances as moot. [DE ##58-2 at 12, 21, 32].

In short, Price has not demonstrated that he exhausted his administrative remedies with any claim. Though exhaustion is a strict requirement, the Sixth Circuit has repeatedly underscored the cardinal reasons for exhaustion, explaining that "the importance of using the prison grievance process [is] to alert prison officials to problems." *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999); *see also Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Reed–Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). Because Price failed to properly appeal per the requirements of CPP 14.6, and his grievances were dismissed by NTC as moot, no reasonable jury could find that Price met the exhaustion requirements under the PLRA prior to filing this lawsuit. The undersigned thus recommends that Price's Eighth Amendment claims against the Defendants be barred by the PLRA.

**2. Supplemental jurisdiction over the remaining state claims should not be exercised.**

Defendants urge dismissal of Price's state law negligence claims against them due to his failure to exhaust his administrative remedies. [DE #58 at 11-13]. The supplemental jurisdiction statute provides discretion to decline supplemental jurisdiction over the remaining state law claims if the Court ultimately chooses to dismiss all of the claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). The Sixth Circuit has reasoned, however, that if the Court *elects* to exercise supplemental jurisdiction over Price's state law claims, precedent

---

[4] Because Price's appeals were untimely, his grievances were never reviewed by the appropriate Medical Director. *See* DE ##58-2 at 8, 17, 29. His complaint, however, includes grievance records for a claim he submitted (#17-10-16M) upon being transferred to GRCC. *See* DE #1 at 21-26. At GRCC, Price's claim accomplished "Final Administrative Review," and thus he successfully exhausted his available remedies. *Id.* In any case, GRCC is not a party to this suit.

8

will compel it to find that those claims are also barred by the PLRA. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999); *see also Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 226 (6th Cir. 2011) (affirming summary judgment on inmate's federal claims for lack of exhaustion of remedies under PLRA, 42 U.S.C. § 1997e(a), but dismissing plaintiff's state law claims for lack of supplemental jurisdiction, acknowledging that plaintiff could pursue state law claims in state court without complying with PLRA exhaustion).

This Court must consider the balance of "judicial economy, convenience, fairness, and comity" in its exercise of discretion under § 1367(c). *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). In light these factors, the undersigned believes it would be more appropriate for the claims of negligence under Kentucky law to be adjudicated in a state forum. This belief not only aligns with principle of comity, but also with the Court's earlier decision of refusing to exercise supplemental jurisdiction over Price's state law claims against the three defendants whose federal claims were dismissed against them. *See* DE #7 at 3-4.

The Sixth Circuit has noted that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims...." *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 586 (6th Cir. 2005) (quoting *Musson*, 89 F.3d at 1254–55). Accordingly, because the undersigned believes Kentucky state courts, and not this Court, should decide whether or not exhaustion applies to the current state law causes of action, the undersigned will recommend dismissal of the remaining negligence claims without prejudice so that Price can pursue them in Kentucky state court (should he desire to do so).

### WHETHER PRICE'S MEDICAL CARE AMOUNTED TO DELIBERATE INDIFFERENCE

Defendants also argue that entry of summary judgment in their favor is warranted due to Price's inability to successfully plead the merits of his § 1983 complaint. We agree.

The gravamen of Price's § 1983 complaint is that the defendants violated his constitutional rights by failing to provide him adequate medical care while he was incarcerated. Critical to the success of defendants' motion for summary judgment is whether Price has provided sufficient facts to allege that the prison officials providing him medical care were "deliberately indifferent" to his serious needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Thus, the question of whether Price has met his burden under the Eighth Amendment's "deliberate indifference" standard is this Court's next inquiry.

"The Eighth Amendment protects prisoners against the imposition of 'cruel and unusual punishment.'" *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986) (citing U.S. Const. amend. VIII)). The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). For this reason, "[t]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to strict scrutiny." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Notwithstanding, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle* at 103. The "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'…[as] proscribed by the Eighth Amendment." *Id*. at 104 (quoting *Gregg v. Georgia*, 428 U.S.153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* "A prison

official is deliberately indifferent when he acts with criminal recklessness, a state of mind that requires that he act with a conscious disregard to a substantial risk of serious harm to the prisoner." *Love v. Taft*, 30 F. App'x 336, 337 (6th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Thus, "[t]his test involves both an objective and subjective component." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000); *see also Farmer* at 834; *Napier,* 238 F.3d at 742.

*Estelle* — a § 1983 case filed by a state prisoner — outlines the traditional deliberate indifference standard for establishing inadequate medical care under the Eighth Amendment:

> In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Estelle* at 105-06.

**Price has not met his burden.**

In this case, Price has not set forth any set of facts, nor provided any evidence, in support of his claims that would entitle him to relief. Price's allegations of medical negligence against the Defendants stem, in part, on his disagreement with the treatment plans he received under the care of Nurse Conyers-Votan and Dr. Clifford. Such disagreements, however, are insufficient to state a constitutional violation, for the Eighth Amendment guarantees that a prisoner will receive adequate medical care — not the medical care of his choice. *Estelle*, 429 U.S. at 104. In the Sixth Circuit, the underlying principle that neither negligent medical care nor delay in medical care constitutes a constitutional violation has been consistently underscored. *See e.g., Acord v. Brown*, No. 93–2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5,

1994) ("Accidents, mistakes, negligence and medical malpractice are not constitutional violations merely because the victim is a prisoner. Neither negligent medical care nor delay in medical care constitutes a violation of the Eighth Amendment unless there has been deliberate indifference, which results in substantial harm.") (citations omitted); *Shorner v. Comacho*, No. 99–6717, 2000 WL 1359633, at *2 (6th Cir. Sept. 14, 2000) ("A difference of opinion regarding medical treatment ... is insufficient to state a claim under the Eighth Amendment.").

In his complaint, Price argues that Nurse Conyers-Votan repeatedly prescribed him the wrong Mobic prescription, causing him permanent damage throughout his body. He also claims that Dr. Clifford failed to properly treat his Hepatitis C Virus (HCV) and diabetic neuropathy, as she not only reduced his prescription for Gabapentin, but also refused to follow the recommendations of the doctors at the University of Kentucky Medical Center.

It is undisputed that Price was seen multiple times by both Nurse Conyers-Votan and Dr. Clifford. [DE #60]. It is also undisputed that while Conyers-Votan provided the plaintiff with the Mobic prescription, Price had requested it "as needed". *Id*. at 21. However, upon his complaint of swelling in his hands, feet, and ankles—indicating adverse reaction to the medication—the Mobic prescription was discontinued, and Price was put on Prednisone. *Id.* at 13-16. During his February 16, 2017 visit, Price appeared "pleasant, well nourished," and was not in "acute distress." *Id.* at 16. Notably, the nurse reported the Mobic side effects in the "Allergies/Intolerance" section of his medical notes. *Id.* at 8-16. Plaintiff nonetheless remained disgruntled with Conyers-Votan for his treatment. [DE #58-2 at 13-14].

Likewise, Price alleges mistreatment against Dr. Clifford due to his unsatisfaction with Clifford's treatment plan for him. In essence, the allegations against Clifford stem from not

12

having received adequate HCV treatment. Price also faults her for her decision to reduce his Gabapentin prescription (commonly known as "Neurontin").

It is undisputed that Price was consistently advised by Dr. Clifford regarding his treatment plans. As noted by Price's medical records, in his July 5, 2019 visit with Dr. Clifford, he was informed that due to his "low[] APRI score" under the Kentucky Department of Corrections Plan, and because he would be seeking parole in September, he would not be eligible for HCV treatment. [*Id.* at 8]. While Price allegedly "voiced understanding" he nonetheless "voiced disagreement." [*Id*]. He was, however, required to "follow up if [the] symptoms don't improve or worsen." [*Id.*]. Clifford indicated the grievance that had been filed by Price [*see* DE #58-2 at 4-5] in an effort to proceed with HCV treatment. [*Id.*]. On his May 18, 2017 visit, Clifford advised Price that because Neurontin would be considered a "controlled substance as of July 1 … [the] plan [will be] to taper off" and that they will attempt to use other medications "to try to control symptoms." [*Id.* at 9]. In his complaint, Price argues that this was done "[j]ust for spite" because "she don't care." [DE #1 at 9].

It is well-established that a moving party may be "'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56). A Plaintiff "must produce sufficient evidence from which the jury may reasonably reject the [defendants'] explanation." *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1083 (6th Cir. 1994). Price has not done so. Evidently, this is not a case where the plaintiff was denied medical care; rather, it is a case where the plaintiff consistently disagreed with the treatment he received and sought alternative treatment.

13

Because Price has failed to establish that any such "deliberate indifference" or medical negligence occurred during his incarceration. Such unfounded claims are not sufficient to overcome the standard of review for summary judgment. *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003).

## CONCLUSION

For an Eighth Amendment claim based on an alleged delay in treatment or mistreatment, the prisoner must place verifying medical evidence in the record establishing the detrimental effect of the delay. *Napier*, 238 F.3d at 742. Price has not met this requirement. Consequently, Price's claim under § 1983 against Defendants for medical negligence is insufficient for relief, and Defendants are entitled to summary judgment as a matter of law. The undersigned finds that Price not only failed to fully exhaust his administrative remedies, but also, that his claims are without merit. As such, for the reasons discussed and based on the facts presented,

**IT IS RECOMMENDED:**

1. That the Defendants' Motion for Summary Judgment, **[R. 58]**, be **GRANTED** on all federal constitutional claims;
2. That all state law claims be dismissed without prejudice; and
3. The motion for resubmission, **[DE # 73]**, should be **DENIED AS MOOT**.

\* \* \* \* \*

Particularized objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service of the same or further appeal is waived. 18 U.S.C. § 636(b)(1); *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002). Generalized objections

or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

This the 23rd day of April, 2019.

Signed By:
*Edward B. Atkins* EBA
United States Magistrate Judge